IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>DANIEL SAMUEL JASON,<br>Defendant. | No. CR09-0087<br>REPORT AND RECOMMENDATION |

On the 22nd day of March 2012, this matter came on for hearing on the First Supplemented and Substituted Petition for Warrant or Summons for Offender Under Supervision (docket number 185) filed by the Probation Office on March 6, 2012. The Government was represented by its attorney, Peter E. Deegan, Jr. Defendant Daniel Samuel Jason appeared in person and was represented by his attorney, Leon F. Spies.

## I. RELEVANT FACTS AND PROCEEDINGS

Following his plea of guilty, Defendant was sentenced on December 1, 2010 to 27 months' imprisonment for mailing threatening communications in violation of 18 U.S.C. § 876(c). *See* docket number 122. It was further ordered that upon his release from prison, Defendant would serve a three-year term of supervised release.

On August 1, 2011, Defendant commenced a term of supervised release. Defendant was placed at the Dubuque Residential Facility. On August 29, 2011, however, the probation office filed a petition alleging Defendant had violated the terms of his supervised release. It was alleged, among other things, that Defendant had inappropriate contact with female residents at the facility and made inappropriate sexual comments. Following a hearing, Defendant's supervised release was revoked and he was ordered to serve a term of six months' imprisonment, followed by a term of supervised release until July 31, 2014. *See* docket number 155.

On January 16, 2012, shortly before his release from FCI Pekin, Defendant wrote three letters to his unit manager and case manager. *See* Government's Exhibits 1-3. Defendant had apparently been told that the Northern District of Illinois had refused to accept his supervision following release from prison, and Defendant would be required to live in Cedar Rapids. Defendant wrote that "if I'm forced back to Iowa I'm sure I'll find my victim and steal her kids." Government's Exhibit 1. Defendant also wrote that "I got a gun in a safety deposit box at a bank. I know where she works." *Id.*

On February 24, 2012, Defendant began a second term of supervised release. He was placed at the Gerald Hinzman Center in Cedar Rapids. Almost immediately, however, Defendant began making inappropriate sexual statements regarding female residents. As set forth in the first supplemented petition, Defendant stated that "the girls wear slut pants," he blew a kiss to a female resident, and "us[ed] his tongue to make an inappropriate gesture to a female resident."[1] *See* docket number 185. Defendant also engaged in obstructive/disruptive conduct and refused to respond to numerous directives made by staff members.

On February 29, 2012, Defendant was examined by Gregory Hotsenpiller, M.D., Ph.D. Dr. Hotsenpiller reported that Defendant suffers from Asperger's disorder and anxiety. *See* docket number 185 at 36-38. While Dr. Hotsenpiller believes that Defendant would benefit from medication and therapy, Defendant refused any treatment.

Senior United States Probation Officer ("SUSPO") Brian Draves testified that shortly before the hearing he was advised by the United States Marshals Service that Defendant had been in telephone contact with a 10-year-old girl. The girl's mother told Draves that she had recently purchased a cell phone for her daughter, and her daughter started receiving calls from Defendant. It was a new phone number and Draves believes it may have been the result of random dialing by Defendant. Defendant asked the girl what she looked like, whether she "wore thongs," and asked if they could be pen pals.

---

[1] At the time of hearing, Defendant admitted the allegations contained in the first supplemented and substituted petition, together with the attachments.

2

Defendant continued to call, even after being told by the girl and her mother to stop calling.

SUSPO Draves recommended that Defendant's supervised release be revoked, with a 12-month term of imprisonment imposed. Mr. Draves is not recommending further supervised release or placement following completion of the prison term. Mr. Deegan recommended imprisonment of at least 12 months, with the issue of further supervised release left to the Court's discretion. Mr. Spies urged that Defendant be given only "minimal" imprisonment, with no supervised release to follow. Mr. Spies asked that any additional prison term be served at FCI Pekin, where Defendant seemed to do relatively well.

A pre-release mental health summary prepared at FCI Pekin shortly before Defendant's release describes Defendant's mental status and recommends that after the halfway house placement, Defendant "be housed in a supportive residential placement." Government's Exhibit 4. According to Mr. Spies, it is the intention of Defendant's parents to assist in his placement at an appropriate non-judicial residential facility following his release from prison. At the time of hearing, Defendant offered information obtained from the internet regarding "habilitation services" and "community integrated living arrangements" which may be available. *See* Defendant's Exhibits B and C.

## *II. DISCUSSION*

Defendant was originally sentenced on December 1, 2010 for mailing threatening communications. Defendant's first term of supervised release was revoked as a consequence of making inappropriate sexual comments toward female residents at a halfway house. Now, following Defendant's second placement at a halfway house, revocation is being sought for similar behavior.

For whatever reasons, Defendant is either unable or unwilling to control his behaviors. He refuses to accept treatment or take appropriate medication. Because of Defendant's acting out, SUSPO Draves has been unable to find any residential facility that is willing to accept Defendant. The United States Probation Office has exhausted all

resources related to Defendant's supervision in the community. There appears to be no reasonable alternative to revoking Defendant's supervised release and ordering an additional term of imprisonment.

According to the Supervised Release Violation Worksheet (docket number 183), these are "Grade C" violations, with a guideline range of imprisonment of 6-12 months, pursuant to § 7B1.4(a). The maximum term of imprisonment is two years, with a maximum term of supervised release of three years. I recommend that Defendant's supervised release be revoked, with a 12-month term of imprisonment imposed. I do not recommend further supervised release following Defendant's completion of the additional prison term. Hopefully, Defendant's parents will be able to assist in placing Defendant in an appropriate non-judicial residential setting.

### III. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's supervised release be revoked and that he be sentenced to serve a 12-month term of imprisonment. It is further **RECOMMENDED** that no further supervised release follow Defendant's imprisonment. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on March 22, 2012.*

DATED this 26th day of March, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA